UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
KATHLEEN HERNANDEZ,                 :
                                    :
    Plaintiff,                      :   Civ. A. No. 04-1926 (SRC)
                                    :
    v.                              :   **OPINION**
                                    :
COMMISSIONER OF SOCIAL SECURITY,    :
                                    :
    Defendant.                      :
_____ :

**Chesler, District Judge**

    This matter comes before the Court upon the appeal of the plaintiff, Kathleen Hernandez ("Plaintiff"), of the final decision of the Commissioner of Social Security ("Commissioner") finding Plaintiff ineligible for Social Security Disability Benefits under the Social Security Act ("Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g), and having considered the submissions of the parties without oral argument pursuant to L. Civ. R. 9.1(b), denies Plaintiff's appeal.

**I.    Background**

    Plaintiff filed the instant appeal on April 23, 2004, challenging the Commissioner's determination that she is not disabled and therefore ineligible for Disability Insurance Benefits ("disability benefits"). Plaintiff initially filed an application for a period of disability and disability benefits on October 19, 1994, claiming that she was disabled due to injuries stemming from an automobile accident on September 16, 1993. (Record ("R.") at 119-21) The application was denied on May 30, 1994. R. at 151-56. Plaintiff's request for reconsideration was denied on

November 9, 1995. R. at 159-61.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on November 20, 1995. R. at 162.  On January 14, 1997 she appeared and testified before ALJ Ralph J. Muehlig. R. at 39-67.  The ALJ considered the case *de novo* and in a decision dated March 25, 1997, the ALJ found that Plaintiff was not disabled. R. at 253-60.  On March 12, 1998, the Appeals Council granted Plaintiff's request for review, vacated the March 25, 1997 decision, and remanded the case to the ALJ for further proceedings. R. at 263-69.  On June 15, 1998, Plaintiff appeared at a second hearing before ALJ Muehlig. R. at 68-118.  Again, the ALJ considered the case *de novo* and found that Plaintiff was not disabled in a decision dated September 2, 1998. R. at 12-28.  The Appeals Council denied Plaintiff's request for review on May 18, 2000. R. at 5-7, 10-11.

Plaintiff then commenced Civil Action No. 00-3477 in this court.  Pursuant to a consent order entered into by the parties, the court remanded to the Agency for further administrative proceedings.  See R. at 316.  On September 11, 2002, the Appeals Council issued an order vacating the ALJ's September 2, 1998 decision and remanding the case to a new ALJ. R. at 316.

The final hearing before ALJ De Steno took place on April 22, 2003. R. at 350-79.  At the hearing, Plaintiff testified as follows.  Plaintiff worked as an assembler for Chanel Cosmetics from 1989 until 1993, when she was in a car accident that resulted in injuries to her cervical spine and left shoulder, down to her left hand. R. at 355, 358.  After the accident she saw several doctors, had an MRI which showed three herniated discs in her cervical spine, and received pain medication and physical therapy which she claims did not help. R. at 359.  Her doctors suggested that she undergo surgery to repair the discs, but she did not have it done because she was afraid. R. at 360.  Plaintiff had not seen a specialist since 1998. R. at 363.  Plaintiff claimed to also suffer from depression, which includes crying, panic, sleepiness, and recurring nightmares. R. at

2

364. Plaintiff said at the time of the hearing she was taking Zoloft for the depression which was not working, as well as pain medication. R. at 365. Plaintiff testified that she lives in a condominium with her daughter, then 19 years of age. R. at 366. Plaintiff is unable to help with the household chores, but her daughter, mother, and neighbors assist her. R. at 367. She is able to drive once in a while, can make herself a sandwich, bathe, and dress on her own, albeit slowly. R. at 367-8.

A vocational expert then answered hypothetical questions about jobs that someone in Plaintiff's condition could possibly perform. R. at 370-75. He said that someone of Plaintiff's age, education, and work experience, with the residual functional capacity of being able to sit up to six hours in an eight-hour day, and stand or walk for the other two could work at one of several jobs in the national and local economy, such as parts inspector or video monitor. R. at 371. He also testified that the same person, if they had to alternate sitting and standing every 15 to 20 minutes would not be able to work at any job. R. at 372. Additionally, the expert said that all of the jobs he mentioned involved repetitive movement of the neck, and one who had problems with this would have a lesser ability to do those jobs. R. at 373. Lastly, the expert testified that someone with the mental restrictions described in Plaintiff's mental residual functional assessment would not be able to work in a competitive labor market. R. at 374.

In a decision issued May 30, 2003, ALJ De Steno made the following findings:

1. The claimant met the non-disability requirements for a period of disability and disability insurance benefits set forth in Section 216(i) of the Act and was insured for benefits through June 30, 1999, but not thereafter.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's three herniated discs of the cervical spine is a severe impairment, based upon the requirements in the Regulations (20 CFR § 404.1521). No severe impairments

referable to depression, post-traumatic stress disorder, gastritis or spastic colitis are established.

4. The claimant's severe impairment does not meet or medically equal any of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. I find the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. I have carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairment (20 CFR § 404.1527).

7. From her alleged onset date through her date last insured, the claimant had the following residual functional capacity: sedentary work not requiring frequent reaching with the left, non-dominant arm.

8. The claimant was unable to perform any of her past relevant work (20 CFR § 404.1565).

9. The claimant is a "younger individual" (20 CFR § 404.1563).

10. The claimant has a "high school education" (20 CFR § 404.1564).

11. The claimant has no transferable skills from any past relevant work (20 CFR § 404.1568).

12. Based on an exertional capacity for a wide range of sedentary work, and the claimant's age, education, and work experience, a finding of "not disabled" is reached in accordance with Medical-Vocational Rule 201.27, used as a framework for decision-making, in conjunction with vocational expert testimony finding the claimant able to perform jobs as a parts inspector, parts sorter, parts cleaner, and a coil inspector.

13. The claimant was not under a "disability" as defined in the Act and regulations, at any time through the expiration of her insured status (20 CFR § 404.1520(f)).

R. at 308-09.  Accordingly, ALJ De Steno found that the claimant was not entitled to a period of disability or Disability Insurance Benefits under Section 216(i) and 223 of the Act. R. at 309.

The Appeals Council denied Plaintiff's request for review on March 9, 2004, rendering the May 30, 2003 decision the final decision of the Commissioner. R. at 290-95.  Thereafter, Plaintiff filed the instant civil action.

**II.     Discussion**

A. Standard of Review

It is well settled that the Commissioner's decisions regarding questions of fact are conclusive before a reviewing court if they are supported by "substantial evidence in the record." 42 U.S.C. § 405 (g); Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000). "Substantial evidence" means more than "a mere scintilla." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)). "It means such relevant evidence as a reasonable mind might accept as adequate." Id. If the ALJ's findings of fact are supported by substantial evidence, the Court is bound by those findings, "even if [it] would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (citing Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)).

The Third Circuit has made it clear "that determination of the existence *vel non* of substantial evidence is not merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983). In reaching a conclusion that a claimant is capable of performing work, the ALJ must analyze all the evidence and explain the weight the ALJ has given to probative exhibits. See Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). As the Third Circuit has held, access to the ALJ's reasoning is indeed essential to a meaningful court review. See Fargnoli, 247 F.3d at 42. Nevertheless, the District Court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Further, evidence not originally presented to the ALJ "cannot be used to argue that the ALJ's decision was not supported by substantial evidence." Matthews v. Apfel, 239 F.3d 589, 594 (3d. Cir. 2001).

5

Therefore, if evidence that was not before the ALJ is presented to the District Court, remand to the Commissioner is possible, but is only an option if "the evidence is new and material and if there was good cause why it was not previously presented to the ALJ." Id. at 593. The Third Circuit requires that claimants present all material evidence to the ALJ in order to ensure "speedy and orderly disposition of Social Security Claims." Id. at 595.

B. Standard for Awarding Benefits Under the Act

An individual may not receive disability insurance benefits under the Act unless he or she first meets statutory insured status requirements. See 42 U.S.C. § 423; see also Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). In order for a claimant to be considered disabled, she must first demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423 (d)(1)(A). Thus, a claimant is not disabled unless her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423 (d)(2)(A).

To demonstrate that a disability exists, a claimant must present evidence that her affliction "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically accepted clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). Although the ALJ must give the plaintiff's subjective complaints "serious consideration," those complaints alone are not enough to satisfy this threshold for establishing a disability. See,

Burns, 312 F.3d at 129.  Furthermore, the claimant bears the burden of proving the existence of the alleged disability. 42 U.S.C. § 423 (d)(5)(A).

After establishing a claimant has met the threshold eligibility requirements, the ALJ must undertake a five-step evaluation process in order to review a claim for disability insurance benefits. See 20 C.F.R. § 404.1520; see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).  In the first step, the ALJ must determine whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a).  If the claimant is working and the work is substantial gainful activity, the application for disability benefits is automatically denied. See 20 C.F.R. § 404.1520(b).  If the claimant is not employed, the ALJ proceeds to step two and determines whether the claimant has a "severe impairment" or "combination of impairments." 20 C.F.R. § 404.1520(c).

A claimant who does not have a "severe impairment" is not disabled. Id.  An impairment is not severe if it does not significantly limit a claimant's physical or mental capacity to perform basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a); see Yuckert, 482 U.S. at 146.  Basic work activities relate to the ability and aptitude to perform most jobs and the physical functions that most jobs require. See 20 C.F.R. §§ 404.1521(b), 416.921(b)(1).  It is not enough for a plaintiff to show that she had certain impairments, those impairments must also result in functional limitations that preclude work activity.  42 U.S.C. § 423(d)(2)(A); see Alexander v. Shalala, 927 F.Supp 785, 792-93 (D.N.J. 1995), aff'd, 85 F.3d 611 (3d Cir. 1996); Daring v. Heckler, 727 F.2d 64 (3d Cir. 1984).

If the impairment is found to be severe, the ALJ moves to step three to determine whether the impairment, or the combined impairments, meets or is equal to those impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Listing").  If so, the claimant is conclusively presumed to

be disabled, and the evaluation ends. See 20 C.F.R. § 404.1520(d).  If the impairment does not meet or equal a listed impairment under the Listing, the ALJ proceeds to step four, which requires a determination whether the limits imposed by claimant's impairment ("Residual Functional Capacity" or "RFC") prevent the claimant from returning to the work claimant performed in the past ("Past Relevant Work" or "PRW"). See 20 C.F.R. § 404.1520(e).  If the claimant is found capable of performing PRW, the claimant is not disabled. Id.  If the claimant is no longer able to perform PRW, the evaluation must continue to the last step.

The fifth and final step in the evaluative process requires a determination of whether the claimant is capable of performing some other work available in the national economy.  In this last step, the burden shifts to the Commissioner to demonstrate "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." Plummer, 186 F.3d at 428 (citing 20 C.F.R. § 404.1520(f)).  Benefits are denied if work exists in the national economy in which the claimant could engage given the above-listed factors.  Thus, entitlement to benefits is dependent upon a finding that the claimant is incapable of performing PRW or some other type of work in the national economy because of the impairments presented.

C. Plaintiff's Appeal

Plaintiff challenges ALJ De Steno's findings at steps three and five of the evaluation process.  Specifically, Plaintiff asserts that at step three, the ALJ erred in not finding Plaintiff's impairment to be equivalent to one of the impairments in the Listing; and at step five, the ALJ disregarded evidence of Plaintiff's neck injury and psychiatric condition. Pl. Br. at 24-27, 30, 32.  The ALJ's findings regarding the other steps of the evaluation, being unchallenged, will be accepted, adopted, and not subject to review by this Court.  This Court will focus solely on the

objections stated above, and seeks to determine only whether the ALJ had substantial evidence to support his findings at the steps in question.

First, Plaintiff argues that the ALJ was incorrect in determining that Plaintiff's condition was not equivalent to any of the listed impairments at step three of the evaluation. Pl. Br. at 24-27. Plaintiff claims that three herniated discs causing pain, spasm, limitation of motion, and sensory and reflex loss is equivalent with the Commissioner's Listing at 104. Pl. Br. at 25. Plaintiff cites the record to show that the ALJ did not dispute whether Plaintiff had such a condition. Pl. Br. at 26.  Plaintiff claims that the ALJ erred by focusing on other conditions which Plaintiff did not have, instead of discussing her symptoms that would satisfy the listing at 104. Pl. Br. at 27.

Second, Plaintiff contends that the ALJ did not sufficiently examine the evidence in his decision at step five of the evaluation. Pl. Br. at 29.  Plaintiff asserts that the ALJ ignored evidence that Plaintiff had severe neck and psychiatric conditions that prevented her from working. Pl. Br. at 32, 34.  Plaintiff cites Cotter v. Harris, 642 F.2d 700 (3d Cir. 1981), to show that the ALJ did not sufficiently discuss the evidence that he rejected, and that he simply disregarded testimony that contradicted his decision.

D. Defendant's Response

Regarding Plaintiff's assertions that the injuries in question satisfied the Commissioner's Listing, and that the ALJ did not adequately discuss the evidence in deciding differently, Defendant argues that the burden rests on the plaintiff to present medical evidence showing that an impairment is equivalent to a listed impairment. Def. Br. at 11 (citing Burnett v. Comm'r, 220 F.3d 112, at 120 (3d Cir. 2000)).  Defendant claims that the plaintiff failed to do this, as the record contains no such evidence.

9

Defendant goes on to list the requirements for the listing that Plaintiff claims applies: nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss, and positive straight-leg raising test if there is involvement of the lower back; spinal arachnoiditis; and lumbar spinal stenosis resulting in pseudoclaudication. Def. Br. at 11-12. Starting with spinal arachnoiditis, Defendant argues that the listing requires that such a diagnosis must be confirmed by an operative note or pathology report of tissue biopsy, or medically acceptable imaging. Def. Br. at 12. Defendant asserts that since the record contains none of these, Plaintiff failed to show she met this requirement. Def. Br. at 13. Moving to lumbar spinal stenosis resulting in pseudoclaudication, Defendant assumes, *arguendo*, that if the Plaintiff indeed had this condition, she did not have the necessary inability to ambulate, thus not meeting this requirement. Id. Lastly, Defendant addresses nerve root compression. Defendant claims that while Plaintiff initially may have had some sensory and reflex loss, the record shows that these neurological findings subsided, and over the years, Plaintiff's examinations showed no neurological deficits or sensory loss. Def. Br. at 14. While in 1998, Plaintiff had hypoactive reflexes in her upper extremities, after having normal reflexes in 1995, in 1999 she had no motor, sensory, or reflex deficits. Def. Br. at 15, 14. Defendant asserts that since Plaintiff does not exhibit any of the necessary symptoms, she does not meet this requirement either, and thus the ALJ was correct in finding that Plaintiff did not meet or equal the impairments in Commissioner's Listing.

In response to Plaintiff's contention that the ALJ did not sufficiently examine the evidence in determining her ability to work in step five, Defendant claims that there was substantial evidence supporting the ALJ's decision. Def. Br. at 15. Defendant says that the ALJ doubted the credibility of some of the doctors' reports, believing them to be written within the context of

litigation, and that specifically the conclusion of Dr. Latimer, the neurologist, was not supported by his own findings, which did not show any neurological problems or deficiencies in memory, concentration, attention, judgment, insight, or perceptions of reality; the ALJ also doubted Dr. Latimer because he always reports total disability. Def. Br. at 19-20.  Defendant also mentions that the ALJ noted a discrepancy between Plaintiff's supposed condition and the treatment received; for example, while Dr. Latimer's diagnosis was severe anxiety and depression, he prescribed Zantac and Lomotil which are gastrointestinal medications; Plaintiff also did not receive aggressive physical therapy, and according to Dr. Fischer, her only pain medication was Tylenol. Def. Br. at 9, 18.  Defendant says that the ALJ also mentioned that Plaintiff's treatment for this injury was far less aggressive than the treatment she had received for a prior back injury. Def. Br. at 18.  Defendant also says that the ALJ noted that the record did not support Plaintiff's claims of inability to move her head and neck, citing medical reports in the record. Def. Br. at 22.  Therefore, Defendant claims that the ALJ sufficiently discussed the evidence in finding that Plaintiff did not suffer neck or psychiatric impairments.

Because the ALJ did not find such injuries, Defendant asserts that the ALJ was justified in only acknowledging the vocational expert's testimony regarding Plaintiff's condition as he understood it. Def. Br. at 24.  As the vocational expert testified that there were a substantial number of jobs for people with the restrictions the ALJ found, Defendant claims that the ALJ sufficiently discussed the evidence in deciding that Plaintiff was not disabled. Id.

### III.   Court's Analysis and Decision

Regarding step three of the evaluation process, Plaintiff argues that her condition is equivalent to an impairment listed under the Commissioner's Listing.  The burden of proof is on

11

the Plaintiff to show that an impairment is equivalent to one falling under the Commissioner's Listing. Burnett v. Comm'r, 220 F. 3d 112, at 120 (3d Cir. 2000). The ALJ stated that there was no documentation showing nerve root compression as characterized by motor or sensory loss, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication, as required by the Listing 1.04A, B, and C, which is what Plaintiff claimed to satisfy. R. at 303. Plaintiff has shown no evidence to the contrary, and this Court has not found any documentation in the record showing that Plaintiff suffers from any of these conditions.

Concerning step five of the evaluation process, Plaintiff argues that the ALJ did not use substantial evidence to support his decision that Plaintiff was capable of sedentary work. Plaintiff cites Cotter v. Harris, 642 F.2d 700 (3d Cir. 1981), arguing that in addition to evidence supporting the result, an ALJ must indicate the evidence that was rejected. But Cotter is distinguishable from the instant case because ALJ De Steno indeed addressed the evidence he rejected and explained why he rejected it.

Regarding Plaintiff's claim of mental impairment, the ALJ evaluated the report of Dr. Latimer. R. at 301. The ALJ noted that while Dr. Latimer described Plaintiff as severely depressed, the only medications he prescribed were for treating gastrointestinal disorders. Id. Additionally, the ALJ explained that while Dr. Latimer found Plaintiff to be totally and permanently disabled, his findings from the mental status examination showed Plaintiff to have coherent associations, full orientation, and her memory, concentration, attention, judgment, and insight were all intact. Id. The ALJ concluded that as Dr. Latimer's conclusion was not supported by his clinical findings, it does not merit probative weight. R. at 304. The ALJ also supported his dismissal of Dr. Latimer's report because of his record of boilerplate disability reports that have always yielded declarations of total and permanent disability, regardless of his

12

objective findings. R. at 306.  The ALJ acknowledged the standard for reviewing evidence of boilerplate reports, citing <u>Miller v. Comm'r</u>, 172 F.3d 303 (3d Cir. 1999), to show that it can be taken into consideration along with further evidence. <u>Id.</u>

When discussing Plaintiff's physical condition, the ALJ properly discussed the medical reports.  He explained his dismissal of Dr. Qualter's assessment of disability, saying that he felt Dr. Qualter's assessment was not consistent with Plaintiff's treatment, and was prepared within a context of litigation. R. at 306.

The ALJ went on to explain his doubts regarding the extent of Plaintiff's injuries by discussing Dr. Fischer's report, which said that Plaintiff's only pain medication was Tylenol, and that Dr. Fischer believed that Plaintiff exaggerated and embellished her complaints, either consciously or subconsciously. R. at 301-02.  Dr. Fischer also noted that while Plaintiff complained of symptoms on her left side, MRI findings showed damage to be on the right side. R. at 302.  The ALJ also noted that Dr. Latimer omitted the results of his neurological examination from his reports. R. at 306.  The ALJ inferred that this was because the results did not support the doctor's conclusion of disability, casting more doubt on the credibility of Dr. Latimer's reports. <u>Id.</u>

Regarding Plaintiff's neck condition, the ALJ explained why he did not accept it to be what Plaintiff claimed, citing the cervical range of motion findings made by Dr. Qualter and Karen Abood-Bruno, a physical therapist. R. at 308.  This understanding of Plaintiff's condition led the ALJ to ask the vocational expert about the job possibilities for a person of Plaintiff's age, education, and work history who could lift and carry objects up to ten pounds, sit for six hours and stand or walk for two hours of an eight-hour day, with restrictions on reaching with the non-dominant left arm. R. at 307.  The vocational expert testified that a person in such a condition

could perform a number of jobs, including parts inspector and video monitor, supporting the ALJ's decision that Plaintiff is not disabled. Id.

As stated above, substantial evidence is defined as more than "a mere scintilla." <u>Plummer v. Apfel</u>, 186 F.3d 422, 427.  The ALJ's discussion of medical reports and why they should not be given probative weight and the vocational expert's testimony demonstrate that the ALJ had substantial evidence behind his decision in step five of the evaluation process concerning Plaintiff's ability to work.

**IV.    Conclusion**

Therefore, for the reasons expressed herein, Plaintiff's appeal is denied.  An appropriate form of Order shall be filed herewith.


                                                                          s/ Stanley R. Chesler, U.S.D.J.


                                                                          Dated: July 22, 2005